A. R. SITTON, Administrator, etc., Respondent, v. GRAND LODGE A. O. U. W. OF MISSOURI, Appellant.

St. Louis Court of Appeals, April 10, 1900.

1. **Witness, Impeachment of:** GENERAL REPUTATION. One of the recognized modes of impeaching a witness is to adduce evidence of his general bad moral character, which inquiry it is held in this state may be extended to evidence of his general reputation as to particular vices other than untruthfulness, as sobriety or chastity.

2. **Habitual Drunkard, Who is₊ INSTRUCTION.** It is held that an instruction properly declares the law which tells the jury that an habitual drunkard is a person given to inebriety or excessive use of intoxicating drinks, who has lost the power or will by frequent indulgence to control his appetite for it.

Appeal from the Howell Circuit Court.—*Hon. William N. Evans*, Judge.

AFFIRMED.

*F. H. Bacon, Orchard & Saye* for appellant.

(1) The court erred in overruling defendant's objection to the question as to the reputation of Mary Brown for chastity. Greenleaf on Evidence, sec. 461. (2) The verdict was against the evidence and the weight of the evidence and against the instructions given by the court, because the evidence showed that Westfall, prior to his death, was in the habit of periodically getting drunk, and that he came to his death because of alcoholic poison. (3) The certificate sued on was void because Westfall became, prior to his death, an habitual drunkard. Westfall's agreement in his application was a promissory warranty, and when violated the contract became *ipso facto* void. Hogins v. Sup. Counc., etc., 76 Cal. 109; 18 Pac. Rep. 125; Sup. Counc., etc., v. Curd, 111 Ill. 284; Smith v. Knights of Father Mathew, 36 Mo. App. 184. (4) An habitual drunkard is a person who is in the habit of getting drunk. Northwestern Mut. L. Ins. Co. v. Muskegon Nat. Bk., 122 U. S. 502; Aetna L. Ins. Co. v. Davey, 123 U. S. 739; 6 Am. & Eng. Ency. of Law (Old Edition), p. 34; Commonwealth v. McNamee, 112 Mass. 286; 10 Am. & Eng. Ency. of Law ( New Edition), p. 276; State v. Pearce, 55 Ia. 33; Mair v. Railroad Pass. Assn., 37 L. T. 356; State v. Savage, 89 Ala. 8. This court has held that the essential

question in such a case is of drunkenness and the habit of it. Golding v. Golding, 6 Mo. App. 602.

*Green & Durham* and *W. J. Orr* for respondent.

One Mary Brown was called as a witness for the defendant and the court permitted the plaintiff to impeach her by showing that her general reputation for virtue and chastity was bad. This is assigned as an error. That a witness may be impeached by showing that his or her general reputation for morality is bad, or that a female's reputation for virtue and chastity is bad, is no longer an open question in this state. State v. Patrick, 107 Mo. 147; State v. Grant, 79 Mo. 446; State v. Raven, 115 Mo. 419; State v. Shroyer, 104 Mo. 446; State v. Rider, 95 Mo. 486; State v. Rider, 90 Mo. 63; State v. Shields, 13 Mo. 236. By the second assignment, it is insisted that the court erred in giving the following instruction on its own motion: "The court instructs the jury that an habitual drunkard is a person given to inebriety or the excessive use of intoxicating drinks, who has lost the power, or will, by frequent indulgence, to control his appetite for it." This is an exact copy of Mr. Bouvier's definition. See Law Dict., title "Habitual Drunkard." And while the definition approved by the United States supreme court in Insurance Co. v. Muskegon National Bank, 122 U. S. 502, and quoted by appellant here, is more prolix and argumentative (which seems to be indulged in the federal courts) it is substantially the same as the one given in the case at bar. The instruction approved in the case cited is as follows: "I think there is no rule of law which says that in order to make a man a drunkard, he must drink every day or every week to excess. Neither, on the other hand, does a single or an occasional excess make a man an habitual drunkard; but if you find that the habit and rule

of a man's life is to indulge periodically and with increasing frequency and violence, in excessive fits of intemperance, such a use of liquor may properly cause the finding of habitual drunkenness. It is the fact of the certainty of these periodical sprees, accompanied with their frequency, which marks the habit. If a man should indulge in such a debauch once a year only, it could not, in my opinion, properly be said that he was an habitual drunkard. But if such debauches increase in frequency and the certainty of their increasing frequency becomes established then the time finally arrives when the line between an occasional excess and a habit is crossed. It is for you to say whether Comstock was at the time of the application, or became afterwards, the victim of such a habit."

BOND, J.—This is a suit by the administrator of the beneficiary in a policy of insurance issued by a fraternal-beneficial society, to which the defense was that the member of the order, contrary to the agreement expressed in his application for insurance, became thereafter an habitual drunkard and met his death from the use of intoxicating liquors. There was a verdict and judgment for plaintiff, from which defendant appealed.

The first error assigned is the reception of evidence as to the general reputation for virtue and chastity of a female witness for defendant. There was no error in the admission of this evidence. One of the recognized modes of impeaching a witness is to adduce evidence of his general bad moral character, which inquiry it is held in this state may be extended to evidence of his general reputation as to particular vices other than untruthfulness, as sobriety or chastity. State v. Shroyer, 104 Mo. loc. cit. 446; State v. Raven, 115 Mo. 419.

Appellant further complains of the refusal of certain

instructions proffered by it as a definition of an habitual drunkard and the giving on that subject of the following instructions of the court's motion, to wit: "The court instructs the jury that an habitual drunkard is a person given to inebriety or the excessive use of intoxicating drinks who has lost the power, or will, by frequent indulgence, to control his appetite for it." This instruction is a verbatim copy of the definition of an habitual drunkard given in Bouvier's Law Dictionary. The state of drunkenness is one where the passions are visibly excited or the judgment impaired by the stimulant of drink or drug. It necessarily involves a temporary loss of full self-control on the part of the person affected. By constant indulgence it becomes habitual. In other words, as has been well said, "the only rule is, has he a fixed habit of drunkenness?" Luderick v. Commonwealth, 18 Pa. St. 172-175; Insurance Company v. Bank, 122 U. S. 501; Magahy v. Robert Magahy, 35 Michigan, 210. The foregoing instruction did not require proof of greater addiction to drink than is necessary to constitute an habitual drunkard under the doctrine of the cases cited. A dissection and analysis of the instruction as a whole will also demonstrate that it only contains an equivalent statement of the rule that an habitual drunkard is one who has acquired a fixed habit of drunkenness. For it may be justly said, a person who has lost the power or will (inclination) not to do a certain act has acquired a fixed habit of doing it. Now the particular act supposed in the instruction is "inebriety," which term is a mere Latin derivative having the same meaning as drunkenness. It follows, therefore, that the effect of the instruction was to tell the jury that they must find that the assured had acquired a fixed habit of inebriety or drunkenness before they could find that he was an habitual drunkard, which is a strictly accurate statement of the rule deduced from reason and precedent. The instruction

under review predicates its conclusion upon either of two propositions: First, loss of power, caused by indulgence in drink, to avoid drunkenness; second, loss of will or inclination, caused in the same manner, to abstain from drunkenness. Both of these propositions express simple truths, verified by every-day observation and plain principles of science, in the light of which it is undeniable that men from frequent over-indulgence in drink, either lose the power or inclination to refrain from gratifying the appetite thus created. It is not true that men only become habitual drunkards from lack of power to live otherwise. Many of them reach that state from simple choice, impelled by the gratification which they experience in the mere sensuous effects of stimulants. This latter view was one of the alternatives clearly expressed in the instruction under review, and which the learned counsel for appellant appears to have overlooked in his criticism of the instruction. It is true that the declaration of law contained in the instruction is expressed in abstract and general terms. It did not, however, incorrectly define an habitual drunkard in the light of the decisions on that subject, and the record wholly fails to show that defendant was prejudiced on account of the want of more particularity and greater fullness in the instruction of the court.

It is insisted finally that the evidence shows that the assured was an habitual drunkard, or that his death was caused from alcoholism. It is sufficient to say that this was an affirmative defense resting upon oral testimony, and that the evidence tending to support it, while cogent, does not seem to be conclusive, and having been disbelieved by the jury we are concluded by their finding. The judgment is therefore affirmed. Judge *Bland* concurs; Judge *Biggs* absent.